No. 15-15449

# THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IVAN PEÑA, DOÑA CROSTON, ROY VARGAS, BRETT STEWART,
SECOND AMENDMENT FOUNDATION, INC., AND
THE CALGUNS FOUNDATION, INC.

*Plaintiffs-Appellants,*

v.

STEPHEN LINDLEY, Chief of the
California Department of Justice Board of Firearms,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
THE HONORABLE KIMBERLY J. MUELLER, JUDGE
CASE NO. 2:09-CV-01185

**MOTION FOR LEAVE OF COURT TO FILE BRIEF OF AMICI CURIAE
THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. AND THE
SPORTING ARMS AND AMMUNITION MANUFACTURERS'
INSTITUTE, INC. IN SUPPORT OF REVERSAL OF THE JUDGMENT
BELOW**

Daniel C. DeCarlo, State Bar No. 160307
Lance A. Selfridge, State Bar No. 101940
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000, Los Angeles, California 90071
(213) 250-1800
Dan.DeCarlo@lewisbrisbois.com; Lance.Selfridge@lewisbrisbois.com
Attorneys for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT IN COMPLIANCE WITH

## FEDERAL RULE OF APPELLATE PROCEDURE 26.1

Amici Curiae National Shooting Sports Foundation, Inc., a nonprofit trade association, and Sporting Arms and Ammunition Manufacturers' Institute, Inc., a nonprofit trade association, have no parent corporations, and no publicly-held corporations hold ten percent or more of their stock.


DATED: July 27, 2015.          /s/ Lance A. Selfridge

                               Daniel C. DeCarlo
                               Lance A. Selfridge
                               LEWIS BRISBOIS BISGAARD & SMITH LLP
                               633 West 5th Street, Suite 4000
                               Los Angeles, California 90071
                               (213) 250-1800
                               Dan.DeCarlo@lewisbrisbois.com
                               Lance.Selfridge@lewisbrisbois.com

                               Attorneys for Amici Curiae

## MOTION FOR LEAVE TO FILE AMICUS BRIEF

*Amici Curiae* National Shooting Sports Foundation, Inc., a nonprofit trade association ("NSSF"), and Sporting Arms and Ammunition Manufacturers' Institute, Inc., a nonprofit trade association ("SAAMI"), hereby move, pursuant to Federal Rule of Appellate Procedure 29, for leave of Court to file the attached "Brief of *Amici Curiae* the National Shooting Sports Foundation, Inc. and the Sporting Arms and Ammunition Manufacturers' Institute, Inc. in Support of Reversal of the Judgment Below" (the "*Amicus* Brief"). The motion and the attached *Amicus* Brief are being filed within the deadline set forth in Federal Rule of Appellate Procedure 29(e).

Prior to filing this motion, NSSF and SAAMI asked all parties to consent to the filing of the attached *Amicus* Brief, as required by Federal Rule of Appellate Procedure 29(a) and Ninth Circuit Rule 29-3. Appellants consented to the filing of the *Amicus* Brief. Appellee advised counsel for NSSF and SAAMI that it does not object to the filing of the *Amicus* Brief.

This Court has broad discretion to allow *amicus* status to a party with a valid interest who can present timely, relevant information. *Gerritsen v. De La Madrid Hurtado*, 819 F.2d 1511, 1514 n. 3 (1987). Courts generally exercise liberality in granting *amicus* status when, as here, the matter is one of public concern. S. Thomas, *Corpus Juris Secundum*, "Amicus Curiae," §3 (2012); *see Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, 293 F. 3d 128, 133 (3rd Cir. 2002) (opinion

by Circuit Judge Samuel Alito: "[S]keptical scrutiny of proposed amicus briefs may equal, if not exceed, the time that would have been needed to study the briefs at the merit stage if leave had been granted").

## MOVANTS' INTEREST

*Amicus* National Shooting Sports Foundation, Inc. ("NSSF") is the national trade association for the firearms, ammunition, and hunting and shooting sports industry. It is a non-profit, tax-exempt corporation comprised of over 13,000 federally licensed firearms manufacturers, distributers, and retailers, including nearly 1,300 in the state of California alone. Its members are engaged in the lawful commerce of constitutionally protected firearms and ammunition products, including the manufacture and sale of semi-automatic pistols and other firearms, ammunition and related products used by hunters, sportsmen, and firearms owners throughout the United States, including in California. NSSF's members also manufacture and sell the firearms and ammunition used by the United States military and by federal, state, and local law enforcement personnel, including California state law enforcement agencies. Its members have unique knowledge of the manufacturing realities imposed by California Penal Code § 31910(b)(7)(A)'s dual placement microstamping requirement as well as the retail-based knowledge necessary to support Appellants' Second Amendment-based challenge.

*Amicus* Sporting Arms and Ammunition Manufacturers' Institute, Inc. ("SAAMI") is a trade association whose membership includes the United States' leading manufacturers of firearms, ammunition, and firearm and ammunition components, and includes one California-based member. Founded in 1926 at the request of the federal government, SAAMI has for nearly ninety years worked to create standards for safety, reliability, and interchangeability in the design, manufacture, transportation, storage, and use of firearms, ammunition, and component parts. SAAMI is a nonprofit, technical, and standards-setting organization accredited by the American National Standards Institute ("ANSI"), and has published more than 700 voluntary standards related to the quality and safety of firearms and ammunition. Its members include manufacturers of semi-automatic pistols who sell products in the California market either directly to licensed federal firearms retailers or to licensed wholesale firearms distributors who then sell the products to licensed firearms retailers. Virtually all new firearms sold in the United States adhere to the SAAMI standards and the United States military, the Federal Bureau of Investigation, and other state and local agencies (including many located in California) require that their suppliers manufacture firearms and ammunition according to SAAMI specifications. Its members possess unique knowledge as to the manufacturing capabilities of semi-automatic handguns and ammunition vital to this Court's understanding of the Second Amendment challenge raised by Appellants.

The interests of NSSF and SAAMI in this case arise generally from their status as trade associations that perform the tasks just described. Additionally, NSSF and SAAMI are the plaintiffs in the action entitled, *National Shooting Sports Foundation, Inc. et al. v. State of California, et al.*, Case No. 14CECG00068 DSB, filed in the Superior Court of the State of California for the Country of Fresno (the "NSSF Action"), in which they sued to enjoin the enforcement of the same statute at issue herein, Cal. Penal Code § 31910(b)(7)(A), on the ground that it is impossible to comply therewith. On July 6, 2015, while cross-motions for summary judgment were pending, the court granted without leave to amend the motion for judgment on the pleadings filed in the NSSF Action by the State of California (the "State"). NSSF and SAAMI will appeal the judgment of dismissal in the NSSF Action after it is entered.

## WHY AN AMICUS BRIEF IS DESIRABLE AND WHY THE MATTERS ASSERTED IN THE PROPOSED BRIEF ARE RELEVANT TO THE DISPOSITION OF THIS CASE

The statute at issue on this appeal, Cal. Penal Code § 31910(b)(A), requires semi-automatic pistols in the State of California be:

> equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice

certifies that the technology used to create the imprint is available to

more than one manufacturer unencumbered by any patent restrictions.

The legislative history for § 31910(b)(7)(A) provides that the statute be interpreted

to require the "engraving of microscopic characters onto the firing pin and other

internal surfaces, which would be transferred onto the cartridge casing when the

handgun is fired."[1]

However, the only surface or internal working part of a semi-automatic pistol

on which it is possible to etch or otherwise to imprint a microscopic array of

characters that identify the make, model, and serial number of the pistol, which can

then be transferred by imprinting on each cartridge case when the firearm is fired, is

the pistol's firing pin. It is thus impossible to comply with the statutory requirements

of Cal. Penal Code § 31910(b)(A). Notwithstanding this impossibility of compliance,

and that the right to possess "the most popular type of [firearm] chosen by Americans

for self-defense in the home" – the handgun – was recognized as applicable to the

states in *McDonald v. City of Chicago*, 561 U.S. 742, 748 (2010), the district court

below found that § 31910(b)(A) did not violate the Second Amendment, which

---

[1]     *See*, September 11, 2007 analysis of California Senate Rules Committee
upon third reading of Assembly Bill 1471, which ultimately resulted in the
codification of Cal. Penal Code § 31910(b)(7)(A), and a copy of which is attached to
the concurrently filed request for judicial notice.

provides that "[a] well regulated militia being necessary to the security of a free State, the right of the People to keep and bear arms shall not be infringed."

On two separate levels, proof that microstamping as required by the statute is impossible to comply with validates Appellants' contention that Cal. Penal Code § 31910(b)(7)(A) violates the Second Amendment and is therefore unenforceable. First, as stated in *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008), "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." A semi-automatic pistol that cannot be microstamped is by definition an "unsafe handgun" under the provisions of Cal. Penal Code § 31910(b)(7)(A), and the manufacture, importation or sale of any such "unsafe handgun" in California constitutes a crime under Cal. Penal Code § 32000(a). Thus, Cal. Penal Code § 31910(b)(7)(A) completely prohibits the use of any newly manufactured semi-automatic pistol, all of which are subject to Second Amendment protection under *Heller*, because as the State admits, no such pistols implement the microstamping technology required by the statute. ER 194. This is causing a *present* violation of the Second Amendment.

Second, the market in California for semi-automatic pistols will continue to erode as retailers, distributors, and manufacturers are increasingly unable to introduce such firearms to the California market. Appellants are correct that no firearms manufacturer has submitted any microstamping-compliant handguns for testing.

Firearms, like all material goods, eventually wear out, so even those semi-automatic pistols that were lawfully sold in California before Cal. Penal Code § 31910(b)(7)(A) took effect will fall out of use. When that happens, as it must, there will be literally no semi-automatic pistols available in California, and the "complete prohibition of their use" that *Heller* prohibits, which has already begun, will have indisputably taken place. *Heller*, 554 U.S. at 629. The practical certainty of that outcome by itself is causing a second, *present* violation of the Second Amendment.

As noted above, NSSF and SAAMI are the plaintiffs in the NSSF action, in which they sued to enjoin the enforcement of Cal. Penal Code § 31910(b)(7)(A) on the ground that it is impossible to comply therewith. NSSF and SAAMI submitted two declarations in the NSSF Action from Frederic Andrew Tulleners, a noted forensic firearms expert, in which Mr. Tulleners opined, without contradiction from any expert on behalf of Appellee (the State of California), that while a microstamped alpha numeric code can be etched or imprinted on the tip of a semi-automatic pistol's firing pin and will sometimes transfer into the primer contained within the cartridge, which the firing pin strikes during the pistol's firing process, a such a microstamped code etched or imprinted anywhere else in a semi-automatic pistol *cannot* be imprinted or transferred to the cartridge case during the pistol's firing process.

The uncontroverted expert evidence from Mr. Tulleners that NSSF and SAAMI developed in the NSSF Action supports the position of Appellants herein that Cal.

Penal Code § 31910(b)(7)(A) violates the Second Amendment. NSSF and SAAMI wish to bring this additional evidence to the attention of this Court because of its obvious relevance to the issues of this appeal as well as its constitutional significance. All of these arguments are set forth in greater detail in the proposed *Amicus* Brief, which is attached to this motion as Exhibit A. NSSF and SAAMI therefore ask this Court to consider their arguments from their unique perspective as the firearms industry's preeminent marketing and technical trade associations. To that end, NSSF and SAAMI respectfully request that this Court grant them leave to file the attached *Amicus* Brief.

DATED: July 27, 2015.          Respectfully submitted,


                               /s/ Lance A. Selfridge

                               Daniel C. DeCarlo
                               Lance A. Selfridge
                               LEWIS BRISBOIS BISGAARD & SMITH LLP
                               633 West 5th Street, Suite 4000
                               Los Angeles, California 90071
                               (213) 250-1800
                               Dan.DeCarlo@lewisbrisbois.com
                               Lance.Selfridge@lewisbrisbois.com

## CERTIFICIATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that the attached motion is proportionately spaced, has a typeface of 14 points or more, and contains 2,044 words.

DATED: July 27, 2015.     /s/ Lance A. Selfridge

Daniel C. DeCarlo
Lance A. Selfridge
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
(213) 250-1800
Dan.DeCarlo@lewisbrisbois.com
Lance.Selfridge@lewisbrisbois.com

Attorneys for *Amici Curiae*

# EXHIBIT A

No. 15-15449

## THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IVAN PEÑA, DOÑA CROSTON, ROY VARGAS, BRETT STEWART,
SECOND AMENDMENT FOUNDATION, INC., AND
THE CALGUNS FOUNDATION, INC.

*Plaintiffs-Appellants,*

v.

STEPHEN LINDLEY, Chief of the
California Department of Justice Board of Firearms,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
THE HONORABLE KIMBERLY J. MUELLER, JUDGE
CASE NO. 2:09-CV-01185

## BRIEF OF *AMICI CURIAE* THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. AND THE SPORTING ARMS AND AMMUNITION MANUFACTURERS' INSTITUTE, INC. IN SUPPORT OF REVERSAL OF THE JUDGMENT BELOW

Daniel C. DeCarlo, State Bar No. 160307
Lance A. Selfridge, State Bar No. 101940
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
(213) 250-1800
Dan.DeCarlo@lewisbrisbois.com; Lance.Selfridge@lewisbrisbois.com

Attorneys for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT IN COMPLIANCE WITH

## FEDERAL RULE OF APPELLATE PROCEDURE 26.1

Amici Curiae National Shooting Sports Foundation, Inc., a nonprofit trade association, and Sporting Arms and Ammunition Manufacturers' Institute, Inc., a nonprofit trade association, have no parent corporations, and no publicly-held corporations hold ten percent or more of their stock.


DATED: July 27, 2015.        /s/ Lance A. Selfridge

Daniel C. DeCarlo
Lance A. Selfridge
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
(213) 250-1800
Dan.DeCarlo@lewisbrisbois.com
Lance.Selfridge@lewisbrisbois.com

Attorneys for *Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTERESTS OF *AMICI CURIAE* ............................................................. 1

STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF
    APPELLATE PROCEDURE 29(c)(5) ........................................... 3

INTRODUCTION ...................................................................................... 3

ARGUMENT ............................................................................................. 5

I.    IT IS IMPOSSIBLE TO COMPLY WITH THE DUAL
    PLACEMENT MICROSTAMPING REQUIREMENTS OF
    CALIFORNIA PENAL CODE § 31910(b)(7)(A).......................... 5

II.   THE DUAL PLACEMENT MICROSTAMPING REQUIREMENTS
    OF CALIFORNIA PENAL CODE § 3910(b)(7)(A) MAKE IT
    IMPOSSIBLE TO INTRODUCE NEWLY DEVELOPED SEMI-
    AUTOMATIC PISTOLS INTO THE CALIFORNIA MARKET. ............. 10

III.  THE SECOND AMENDMENT IS NECESSARILY BURDENED
    BY THE REQUIREMENTS OF CALIFORNIA PENAL CODE §
    31910(b)(7)(A) BECAUSE IT IS IMPOSSIBLE TO COMPLY
    WITH THE STATUTE'S DUAL PLACEMENT
    MICROSTAMPING REQUIREMENTS. ...................................... 12

CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

## FEDERAL COURT CASES

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)............................................................5, 12, 13, 14, 15, 16, 17
*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ............................................................... 13
*McDonald v. City of Chicago,*
    561 U.S. 742 (2010)........................................................................ 12
*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) .............................................................17
*Trigueros v. Adams,*
    658 F.3d 983 (9th Cir. 2011) ..............................................................6

## FEDERAL STATUTORY AUTHORITIES

18 U.S.C. §§ 922(a)(3) .......................................................................... 12
18 U.S.C. §§ 922(B)(3)

## STATE STATUTORY AUTHORITIES

Cal. Penal Code § 31910 ........................................................................ 6
Cal. Penal Code § 31910(b)(7)(A) ................ 1, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16
Cal. Penal Code § 31910(b)(A).................................................................. 4
Cal. Penal Code § 32000 ....................................................................... 16
Cal. Penal Code §§ 32000-32030................................................................ 3
Cal. Penal Code § 32000(a)................................................................14, 15

## FEDERAL RULES AND REGULATIONS

Fed. R. Evid.201 ...........................................................................6, 10
Fed. R. Evid.201(b) ............................................................................ 6
Fed. R. Evid.201(c) ............................................................................ 6
Fed. R. Evid.201(d) ............................................................................ 6

4819-0286-3398.1

## INTERESTS OF *AMICI CURIAE*

*Amicus* National Shooting Sports Foundation, Inc. ("NSSF") is the national trade association for the firearms, ammunition, and hunting and shooting sports industry. It is a non-profit, tax-exempt corporation comprised of over 13,000 federally licensed firearms manufacturers, distributers, and retailers, including nearly 1,300 in the state of California alone. Its members are engaged in the lawful commerce of constitutionally protected firearms and ammunition products, including the manufacture and sale of semi-automatic pistols and other firearms, ammunition and related products used by hunters, sportsmen, and firearms owners throughout the United States, including in California. NSSF's members also manufacture and sell the firearms and ammunition used by the United States military and by federal, state, and local law enforcement personnel, including California state law enforcement agencies. Its members have unique knowledge of the manufacturing realities imposed by California Penal Code § 31910(b)(7)(A)'s dual placement microstamping requirement as well as the retail-based knowledge necessary to support Appellants' Second Amendment-based challenge.

*Amicus* Sporting Arms and Ammunition Manufacturers' Institute, Inc. ("SAAMI") is a trade association whose membership includes the United States' leading manufacturers of firearms, ammunition, and firearm and ammunition components, and includes one California-based member. Founded in 1926 at the

request of the federal government, SAAMI has for nearly ninety years worked to create standards for safety, reliability, and interchangeability in the design, manufacture, transportation, storage, and use of firearms, ammunition, and component parts. SAAMI is a nonprofit, technical, and standards-setting organization accredited by the American National Standards Institute ("ANSI"), and has published more than 700 voluntary standards related to the quality and safety of firearms and ammunition. Its members include manufacturers of semi-automatic pistols who sell products in the California market either directly to licensed federal firearms retailers or to licensed wholesale firearms distributors who then sell the products to licensed firearms retailers. Virtually all new firearms sold in the United States adhere to the SAAMI standards and the United States military, the Federal Bureau of Investigation, and other state and local agencies (including many located in California) require that their suppliers manufacture firearms and ammunition according to SAAMI specifications. Its members possess unique knowledge as to the manufacturing capabilities of semi-automatic handguns and ammunition vital to this Court's understanding of the Second Amendment challenge raised by Appellants.

The interests of NSSF and SAAMI in this case arise generally from their status as trade associations that perform the tasks just described. Additionally, NSSF and SAAMI are the plaintiffs in the action entitled, *National Shooting Sports Foundation, Inc. et al. v. State of California, et al.*, Case No. 14CECG00068 DSB, filed in the

Superior Court of the State of California for the Country of Fresno (the "NSSF Action"), in which they sued to enjoin the enforcement of the same statute at issue herein, Cal. Penal Code § 31910(b)(7)(A), on the ground that it is impossible to comply therewith. On July 6, 2015, while cross-motions for summary judgment were pending, the court granted without leave to amend the motion for judgment on the pleadings filed in the NSSF Action by the State of California (the "State"). NSSF and SAAMI will appeal the judgment of dismissal in the NSSF Action after it is entered.

Appellants have consented and Appellee does not object to the filing of this brief.

## STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 29(c)(5)

No party's counsel authored this amicus brief in whole or in part. Neither any party nor any party's counsel contributed money that was intended to fund the preparation or submission of this amicus brief. No person, other than the *Amici Curiae*, their members, or their counsel, contributed any money that was intended to fund the preparation or submission of this amicus brief.

## INTRODUCTION

Under California law, no handgun can be produced, imported into or sold in California without passing required California Department of Justice safety and functionality tests and being listed on the roster of handguns certified for sale in

California. Cal. Penal Code §§ 32000-32030. For a handgun to be placed on California's roster of handguns "determined not to be unsafe," Cal. Penal Code. § 32015, all semi-automatic pistols must be equipped with dual placement microstamping in accordance with the requirements of Cal. Penal Code § 31910(b)(A). This statute requires semi-automatic pistols be:

> equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one manufacturer unencumbered by any patent restrictions.

Cal. Penal Code § 31910(b)(7)(A). On May 17, 2013, California certified that such technology was unencumbered by any patent restrictions, triggering the requirement that all future models of semi-automatic pistols introduced to the California market be equipped with dual placement microstamping technology.

Although the legislative goals to provide law enforcement with effective tools to decrease violent crime and increase public safety are laudable, the dual placement microstamping requirement is impossible to comply with from a manufacturing perspective. As a result of this impossibility, the number of semi-automatic pistols

available for purchase by law-abiding California residents exercising their Second Amendment rights is slowly dwindling toward the inevitable effective ban on the sale of all semi-automatic pistols in California. The district court erred in holding that this inexorable march toward a total ban on the quintessential firearm for self-defense imposes no burden on the Second Amendment under the precedent set in *District of Columbia v. Heller*, 554 U.S. 570 (2008). As such, the district court's judgment upholding the constitutionality of California's handgun roster program should be reversed.

## ARGUMENT

### I.   IT IS IMPOSSIBLE TO COMPLY WITH THE DUAL PLACEMENT MICROSTAMPING REQUIREMENTS OF CALIFORNIA PENAL CODE § 31910(b)(7)(A).

Dual placement microstamping as required by Cal. Penal Code § 31910(b)(7)(a) is "non-existent technology." Appellants' Opening Brief at 2 ("App. Br."). For this simple reason "no handgun available for sale in the United States has the microstamping technology required by California's roster law." *Id.* at 10. As Appellants note in their Opening Brief, 100% of the firearms available for sale and testing for placement on California's handgun roster would fail for lack of a dual placement microstamp. *Id.* at 42. This stark fact is supported by evidence provided not only by the inventor of California's microstamping technology, Todd Lizotte, but also several peer-reviewed studies, the declaration of Lawrence G. Keane in the lower

court, and two separate declarations submitted by Frederic Andrew Tulleners in the NSSF Action.[1]

The legislative history of Cal. Penal Code § 31910 unequivocally establishes that the legislature understood that "[c]riminals could easily defeat the intended identification purpose of [A.B. 1471] by filing the microstamping on a firing pin. They could also switch the firing pin from one pistol to another pistol." Rep. Sen. Rep. Office of Policy at 617 (Apr. 10, 2007). The necessity of having a second placement of a microstamp is clear from the ease at which a microstamped firing pin can be defaced using common household tools. ER 75 (utilizing a household sharpening stone). From this realization dual-placement microstamping was born, rendering Cal. Penal Code § 31910 impossible to comply with and the subject of the NSSF Action.

---

[1]    By concurrent filing NSSF and SAAMI attach and ask the Court to judicially notice the existence of Frederic Andre Tulleners declarations dated January 10, 2014 (the "First Tulleners Declaration") and June 9, 2015 (the "Second Tulleners Declaration"), pursuant to Federal Rule of Evidence 201. Fed. R. Evid. 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(c) provides that "[t]he court … must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(d) provides that "[t]he court may take judicial notice at any stage of the proceeding," which includes on appeal. *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). Moreover, a federal appellate court may take judicial notice of proceedings in state courts as well as other federal courts. *Id.*

Mr. Tulleners' two declarations submitted in the NSSF Action in support of the argument of impossibility are based on his extensive history of forensic firearms employment dating back to 1971 that includes work as a laboratory manager and a supervising criminalist for the California Department of Justice, as well as the publication of fourteen peer-reviewed articles concerning firearms and ballistics imaging issues. First Tulleners Decl. ¶¶ 4-8. In Mr. Tulleners' experience "[i]t is impossible for any manufacturer of semi-automatic pistols to comply with the provisions of California Penal Code section 31910(b)(7)(A), because it is not possible under the current state of firearms micro serial number technology to etch or otherwise to imprint, on any interior surface or internal working part of a semi-automatic pistol other than its firing pin, a microscopic array of characters that identify the make, model and seral number of the pistol, and that can be transferred by imprinting on each cartridge case when the pistol is fired." First Tulleners Decl. ¶ 33; *see also id.* ¶11. Although "a microstamped alpha numeric code can be etched or imprinted on the tip of a semi-automatic pistol's firing pin" and "will sometimes transfer into the primer contained within the cartridge, which the firing pin strikes during the pistol's firing process," "a microstamped alpha numeric code etched or imprinted on the breech face, chamber wall, extractor, ejector or magazine of a semi-automatic pistol *cannot* be imprinted or transferred to the cartridge case during the pistol's firing process." *Id.* at ¶¶ 5-10 (emphasis added).

That a microstamped alpha numeric code "will *sometimes* transfer" to the *primer* during the firing process does not comply with Cal. Penal Code § 31910(b)(7)(A)'s requirement that the "make, model, and serial number of the pistol" be "imprinted in two or more places in the interior surface or internal working parts of the pistol, and [be] transferred by imprinting on each cartridge case" every time the semi-automatic pistol is fired. First Tulleners Decl. ¶ 24 (emphasis added); *see* SAAMI Glossary of Terms, *available at http://www.saami.org/glossary/display. cfm?letter=C* (defining "cartridge case" to mean "The main body of a single round into which other components are inserted to form a cartridge. Usually refers to centerfire and rimfire cartridges. Serves as a gas seal during firing of the cartridge. Usually made of brass, steel, copper, aluminum or plastic[.] Also referred to as a shellcase."); *see also* ER 39 Decl. of Lawrence G. Keane ¶ 22.

Mr. Tulleners' expert opinions on the impossibility of dual-placement microstamping are supported by the peer-review studies already in evidence before this court, ER 46-124, as well as statements by Todd Lizotte, the inventor of the microstamping technology that led to California DOJ's certification that microstamping technology "used to create the imprint" was unencumbered by patent. Cal. Penal Code § 31910(b)(7)(A). One and a half years after California Penal Code § 31910(b)(7)(A) was enacted Mr. Lizotte conceded that "it is apparent that legitimate questions exist related both to the technical aspects, production costs, and database

8

4819-0286-3398.1

management associated with microstamping that should be addressed before wide scale implementation is legislatively mandated." ER 40-41. Among these technical concerns is a misguided understanding of firearms capabilities by the State of California in the NSSF Action, in which the State argued without any expert support that the magazine of a semi-automatic pistol could also be microstamped in accordance with the provisions of Cal Penal Code § 31910(b)(7)(A). In the Second Tulleners Declaration, which NSSF and SAAMI submitted in support of the summary judgment motion filed by NSSF and SAAMI in the NSSF Action, Mr. Tulleners likewise opined that "[a] microstamped alpha numeric code etched or imprinted on the magazine of a semi-automatic pistol cannot be imprinted or transferred to the cartridge case during the pistol's firing process." Second Tulleners Decl. ¶ 2.[2]

Cal Penal Code § 31910(b)(7)(A) of course requires that semi-automatic pistols be "designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired . . . ." The legislative history for § 31910(b)(7)(A) provides that the statute be interpreted to require the "engraving of microscopic characters onto the firing pin and other internal

---

[2]      While the State filed objections to the First Tulleners Declaration, no expert declaration refuting or rebutting his conclusions in either declaration was ever filed in the NSSF Action.

4819-0286-3398.1

surfaces, which would be transferred onto the cartridge casing when the handgun is fired."[3] Expert opinion that the requirements of Cal. Penal Code § 31910(b)(7)(A) cannot be complied with has not and cannot be refuted by the State, so NSSF and SAAMI through their shared expertise on this subject support Appellants' contention herein that it is impossible to comply with the microstamping requirements of Cal Penal Code § 31910(b)(7)(A) as the statute requires, *one hundred percent of the time*.

## II. THE DUAL PLACEMENT MICROSTAMPING REQUIREMENTS OF CALIFORNIA PENAL CODE § 3910(b)(7)(A) MAKE IT IMPOSSIBLE TO INTRODUCE NEWLY DEVELOPED SEMI-AUTOMATIC PISTOLS INTO THE CALIFORNIA MARKET.

Appellants are correct that "[n]o firearms manufacturer has submitted any microstamping-compliant handguns for testing," App. Br. at 10; that the State "has no information as to whether any manufacturer will ever produce microstamping handguns," *id.*; that the chief executives of two of the country's largest firearms manufacturers, as well as a senior executive of the firearms industry's leading trade association and accredited standards development organization, "all testified that no plans exist to introduce microstamping because it cannot be practically implemented," *id.*; *see also* ER 39, ¶ 21; that microstamping is "infeasib[le]" and "fictional," App.

---

[3] *See*, September 11, 2007 analysis of California Senate Rules Committee upon third reading of Assembly Bill 1471, which ultimately resulted in the codification of Cal. Penal Code § 31910(b)(7)(A). NSSF and SAAMI ask the Court pursuant to Fed. R. Evid. 201 to take judicial notice of that analysis, which appears in the concurrently filed request for judicial notice.

Br. at 12; and that microstamping "does not practically exist," *id.* at 43. Any modification to a currently-rostered semi-automatic pistol that goes beyond the extremely limited "similar handgun" exceptions for purely cosmetic changes will result in the handgun being deemed a "new model" and thus removed from the roster because it does not have dual placement microstamping. 11 Cal. Code Reg. 4059 (2015). Beyond the borders of California, time marches forward and firearms manufacturers are able to update their firearms to reflect changes in technology that allow for a more reliable and safer firearm to be introduced to those markets. In California, however, these modifications and updates cannot be made and any such change results in the automatic delisting of any firearm that is "modified in any way from those [handguns] that are being sold after certification has been granted." *Id.* at § 4059(a).

As the aforementioned trade association executive declared in the district court proceeding below, ER 42, ¶¶ 31-32,

> [M]anufacturing is not a stagnant process for any industry, including firearms manufacturing. Manufacturers must, and will, make normal enhancements and improvements to the design and manufacturing process of their pistols. What will, and already is happening over time is that California residents will not be able to purchase the newest, most durable, reliable and safer handguns on the market that are available to

consumers outside of California. This is not a theoretical problem. Major manufacturers of some of the most popular and reliable handguns in the country, like Sturm-Ruger & Co. and Smith & Wesson, have already announced that they will not be able to continue to sell many of their handguns in California because of the microstamping requirement.... Companies have actually stopped doing business in California because of that requirement, not because they wished to cease operations there.... [¶] Over time more and more manufacturers will inevitably do the same, which means fewer and fewer pistol models being available to consumers in California, as federal law makes it illegal to purchase a handgun across state lines. 18 U.S.C. §§ 922(a)(3), 922(b)(3).

## III. THE SECOND AMENDMENT IS NECESSARILY BURDENED BY THE REQUIREMENTS OF CALIFORNIA PENAL CODE § 31910(b)(7)(A) BECAUSE IT IS IMPOSSIBLE TO COMPLY WITH THE STATUTE'S DUAL PLACEMENT MICROSTAMPING REQUIREMENTS.

The Second Amendment to the United States Constitution provides that "[a] well regulated militia being necessary to the security of a free State, the right of the People to keep and bear arms shall not be infringed." The right to possess "the most popular type of [firearm] chosen by Americans for self-defense in the home" – the handgun – was recognized as applicable to the states in *McDonald v. City of Chicago*, 561 U.S. 742, 748 (2010). *Heller*, 554 U.S. at 629. Although certain regulations

limiting the Second Amendment are permissible, under no formulation of *Heller* can a statutory scheme that will inevitably prohibit any law-abiding California resident from obtaining a semi-automatic pistol be viewed in a way that does not impermissibly burden the Second Amendment. Lawful commerce in firearms—such as that engaged in by the respective members of the *Amici Curiae*—is itself within the reach of the Second Amendment, and thus protected from regulations that prohibit law-abiding California residents from obtaining semi-automatic pistols. It is through that lawful commerce, as a practical matter, that the Second Amendment right is exercised. As the Seventh Circuit recognized in *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), the right to keep and bear arms means little if citizens are unable to access means of remaining proficient in the use of firearms. Although this court is not bound by the Seventh Circuit, it is impossible to ignore this implied extension of the Second Amendment to lawful commerce. *See id.* (the City of Chicago's total ban on firing ranges was struck down in part because "the core right wouldn't mean much without the training and practice that make it effective").

On two separate levels, proof that microstamping as required by the statute is impossible to comply with validates Appellants' contention that Cal. Penal Code § 31910(b)(7)(A) violates the Second Amendment and is therefore unenforceable. First, as stated in *District of Columbia v. Heller, supra*, 554 U.S. at 629, "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a

complete prohibition of their use is invalid." A semi-automatic pistol that cannot be microstamped is by definition an "unsafe handgun" under the provisions of Cal. Penal Code § 31910(b)(7)(A), and the manufacture, importation or sale of any such "unsafe handgun" in California constitutes a crime under Cal. Penal Code § 32000(a). Thus, Cal. Penal Code § 31910(b)(7)(A) completely prohibits the use of any newly manufactured semi-automatic pistol, all of which are subject to Second Amendment protection under *Heller*, because as the State admits, no such pistols implement the microstamping technology required by the statute. ER 194. The expert declarations that NSSF and SAAMI possess, Mr. Tulleners' two declarations, would therefore show, as Appellants argue, that Cal. Penal Code § 31910(b)(7)(A) is indeed causing a current, ongoing violation of the Second Amendment in this fashion.

Second, the market in California for semi-automatic pistols will continue to erode as retailers, distributors, and manufacturers are increasingly unable to introduce such firearms to the California market. Mr. Tulleners' two declarations thus additionally supports Appellants' argument, that "[i]n time, semiautomatics will completely disappear from California's market . . . ." App. Br. at 43.[4] Firearms, like all material goods, eventually wear out, so even those semi-automatic pistols that were

---

[4]    In the last seven month alone, the number of semi-automatic pistols listed on the Handgun Roster has dwindled from 735 to 590 – a decrease of 145. App. Br. at 12. Since the end of 2013, the total number of semi-automatic pistols available for purchase in California has dropped by 293. *Id.*

lawfully sold in California before Cal. Penal Code § 31910(b)(7)(A) took effect will fall out of use. When that happens, as it must, there will be literally no semi-automatic pistols available in California, and the "complete prohibition of their use" that *Heller* prohibits, which has already begun, will have indisputably taken place. *Heller*, 554 U.S. at 629. The practical certainty of that outcome by itself is causing a *present* violation of the Second Amendment. The impossibility of complying with the microstamping requirements of Cal. Penal Code § 31910(b)(7)(A) therefore leads inexorably to the permanent, wholesale destruction of the Second Amendment right to use semi-automatic pistols that *Heller* has recognized.

A semi-automatic pistol that cannot be microstamped is by definition an "unsafe handgun" under the provisions of Cal. Penal Code § 31910(b)(7)(A), and the manufacture, importation or sale of any such "unsafe handgun" in California constitutes a crime under Cal. Penal Code § 32000(a). Thus, Cal. Penal Code § 31910(b)(7)(A) completely prohibits the production and importation of any newly manufactured semi-automatic pistol for sale in California, because as the State admits, no such pistols implement the microstamping technology required by the statute. ER 194. Mr. Tulleners' two declarations, along with the statements by Mr. Lizotte, combined with the peer-reviewed studies already presented to the Court, therefore show, as Appellants argue, that Cal. Penal Code § 31910(b)(7)(A) is indeed causing a current, ongoing violation of the Second Amendment.

4819-0286-3398.1

Citizens of California should not be forced to wait for the day when no semi-automatic pistols are listed on the Handgun Roster to be allowed to defend their Second Amendment rights. The exceptions to Cal. Penal Code § 31910(b)(7)(A) allow for the "sale or purchase of a handgun, if the handgun is sold to, or purchased by, the [California] Department of Justice, a police department, a sheriff's official, a marshal's office, the Department of Corrections and Rehabilitation, the California Highway Patrol, any district attorney's office, any federal law enforcement agency, or the military or naval forces of [California] or of the United States." Cal. Penal Code § 32000 (b)(4). The State's microstamping scheme thus represents a truly insidious attack on the Second Amendment, because it seeks to deprive law abiding California citizens of their Constitutional right to own semi-automatic pistols, while at the same time protecting the State's right to possess those same firearms. In sum, when no more semi-automatic pistols are available on the Handgun Roster for ordinary, law-abiding Californians to purchase the only people who will have access to those firearms will be the State and its agents. That is the exact scenario feared by the Founding Fathers that led to the adoption of the Second Amendment in the first place. *See Heller*, 554 U.S. at 599 ("the Second Amendment's prefactory clause announces the purpose for which the right was codified: to prevent elimination of the militia" by the government). Rather than permit infringements of a recognized right and to avoid the inevitable repeat of history, this court should adhere to the standard set forth in

4819-0286-3398.1

*Heller*, that where the core of the Second Amendment is burdened by a total ban, the ban cannot stand. *Id.* at 635; *see also Moore v. Madigan*, 702 F.3d 933, 940-41 (7th Cir. 2012) (degrees of scrutiny of no moment where a flat ban burdened protected conduct).

## CONCLUSION

For the foregoing reasons, NSSF and SAAMI respectfully request that the judgment below be reversed.


DATED:  July 27, 2015.     /s/ Lance A. Selfridge

Daniel C. DeCarlo
Lance A. Selfridge
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
(213) 250-1800
Dan.DeCarlo@lewisbrisbois.com
Lance.Selfridge@lewisbrisbois.com

Attorneys for *Amici Curiae*

# CERTIFICIATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(C)

I hereby certify that the attached amicus brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,961 words.

DATED: July 27, 2015.          /s/ Lance A. Selfridge

                                    Daniel C. DeCarlo
                                    Lance A. Selfridge
                                    LEWIS BRISBOIS BISGAARD & SMITH LLP
                                    633 West 5th Street, Suite 4000
                                    Los Angeles, California 90071
                                    (213) 250-1800
                                    Dan.DeCarlo@lewisbrisbois.com
                                    Lance.Selfridge@lewisbrisbois.com

                                    Attorneys for *Amici Curiae*

## CERTIFICATE OF SERVICE

On this, the 27th day of July 2015, I electronically filed the attached BRIEF OF *AMICI*

*CURIAE* THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. AND THE

SPORTING ARMS AND AMMUNITION MANUFACTURERS' INSTITUTE, INC. IN

SUPPORT OF REVERSAL OF THE JUDGMENT BELOW with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Particpants

in this appeal are registered CM/ECF users who will be served by the CM/ECF system on July

27, 2015.


I declare under penalty of perjury that the foregoing is true and correct.
Executed this 27th day of July, 2015.


/s/ Lance A. Selfridge

Lance A. Selfridge

# CERTIFICATE OF SERVICE

On this, the 27th day of July 2015, I electronically filed the attached MOTION FOR LEAVE OF COURT TO FILE BRIEF OF AMICI CURIAE THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. AND THE SPORTING ARMS AND AMMUNITION MANUFACTURERS' INSTITUTE, INC. IN SUPPORT OF REVERSAL OF THE JUDGMENT BELOW with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Particpants in this appeal are registered CM/ECF users who will be served by the CM/ECF system on July 27, 2015.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of July, 2015.

/s/ Lance A. Selfridge

Lance A. Selfridge

4834-4852-7398.1