No. 15-15449

In the
**United States Court of Appeals**
for the Ninth Circuit

IVAN PEÑA, et al.,
*Plaintiff-Appellant*,

v.

STEPHEN LINDLEY,
Chief of the California Department of Justice
Bureau of Firearms,
*Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of California
Hon. District Judge Kimberly J. Mueller
Case No. 2:09-cv-01185-KJM (CKD)

**BRIEF OF BRADY CENTER TO PREVENT GUN VIOLENCE
AS AMICUS CURIAE IN SUPPORT OF APPELLEE AND AFFIRMATION**

Daniel Levin, Esq.
White & Case LLP
701 – 13th Street NW
Washington, DC 20005-3807
Telephone: 202-626-3000

Eric A. Krause, Esq.
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306-1209
Telephone: 650-213-0300

Jonathan Lowy
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC 20002
Telephone: 202-370-8104

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

The Brady Center to Prevent Gun Violence has no parent corporations.

Because it has no stock, no publicly held company owns 10% or more of its stock.

Date: September 28, 2015

Respectfully submitted,

*/s/ Eric A. Krause*
Eric A. Krause, Esq.
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306-1209
Telephone:   650-213-0300

Daniel Levin, Esq.
White & Case LLP
701 – 13th Street NW
Washington, DC 20005-3807
Telephone:   202-626-3000

Jonathan Lowy
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC 20002
Telephone:   202-370-8104

Counsel for Amicus Curiae
THE BRADY CENTER TO PREVENT
GUN VIOLENCE

# TABLE OF CONTENTS

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE ............. 1

STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTORNEYS, OR OTHER PERSONS IN FUNDING OR AUTHORING THE BRIEF ............................................. 2

ARGUMENT .......................................................................................... 2

I.    California's Unsafe Handgun Act Falls Squarely within the List of Presumptively Lawful Regulations Provided by *District of Columbia v. Heller* .................................................................... 2

   A.    Firearms Without Safety Features Raise the Risk of Injury and Death From Accidental and Unintentional Shootings ..................... 4

   B.    Other Jurisdictions Have Similarly Established Public Safety Requirements for the Commercial Sale and Purchase of Firearms ................................................. 6

      Washington D.C. ................................................... 7

      Massachusetts ........................................................ 9

      Maryland .............................................................. 10

      New York ............................................................. 11

      Illinois ................................................................. 11

      Hawaii .................................................................. 13

      Minnesota ............................................................ 13

   C.    Since *Heller*, Courts Have Generally Concluded that These Firearm Safety Requirements Survive a Second Amendment Challenge ............................................. 13

CONCLUSION ..................................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................... 15

CERTIFICATE OF SERVICE .............................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Heller,*
 554 U.S. 570 (2008) .......................................................................... passim

*Heller v. District of Columbia,*
 670 F.3d 1244 (D.C. Cir. 2011) ....................................................14

*Ill. Ass'n of Firearms Retailers v. City of Chicago,*
 961 F.Supp.2d 928 (N.D. Ill. 2014) ..............................................15

*Jackson v. City & County of San Francisco,*
 746 F.3d 953 (9th Cir. 2014) .........................................................14

*Kwong v. Bloomberg,*
 723 F.3d 160 (2nd Cir. 2013) ........................................................14

*McDonald v. City of Chicago, Ill.,*
 561 U.S. 742 (2010) .................................................................. 4, 10

*NRA v. ATF,*
 714 F.3d 334 (5th Cir. 2013) .........................................................14

**Statutes**

18 U.S.C. § 923 .......................................................................................11

501 Mass. Code Regs §§ 7.01-7.16 ....................................................7, 9

720 Ill. Comp. Stat. 5/24-3(A)(h) (West 2015) ................................ 7, 12

720 Ill. Comp. Stat. 5/24-9.5(a) (West 2015) .......................................12

720 Ill. Comp. Stat. 5/24-9.5(d) (West 2015) .......................................12

940 Mass Code Regs. §§ 16.01-16.09 .............................................. 7, 10

D.C. Code Ann. §§ 7-2505.03-7-2505.04 (West 2015).......................6, 8

D.C. Mun. Regs. tit. 24, § 2323 ...............................................................6

Firearms Registration Amendment Act of 2008, D.C. Law 17-372.........................7

Haw. Rev. Stat. Ann. § 134-15(a) (West 2015)................................. 7, 13

Haw. Rev. Stat. Ann. § 134-15(b) (West 2015) ....................................13

Mass. Gen. Laws ch. 140, § 131½ .........................................................7, 9

Mass. Gen. Laws ch. 140, § 131¾ .........................................................7, 9

Mass. Gen. Laws ch. 140, § 123 ............................................................7, 9

Md. Code Ann., Pub. Safety, § 5-405 ........................................................7

Md. Code Ann., Pub. Safety, § 5-406 ........................................................7

Md. Code Reg. 29.03.03.10 (2015) ..........................................................10

Minn. Stat. § 624.712 ............................................................................13

Minn. Stat. § 624.716 ..............................................................................7

N.Y. Comp. Codes R. & Regs. tit. 9, §§ 482.1-482.2 .............................11

N.Y. Comp. Codes R. & Regs. tit. 9, §§ 482.5-482.6 ........................ 7, 11

**Other Authorities**

Law Center to Prevent Gun Violence, *Regulating Guns in America: A Comprehensive Analysis of Gun Laws Nationwide* 206 (2014) (available at http://smartgunlaws.org/wp-content/uploads/2014/10/RGIA-For-Web.pdf) ............................................................................... 5, 14

Michael Luo & Mike McIntire, *Children and Guns: The Hidden Toll*, NY Times at A1 (Sept. 29, 2013) (available at http://www.nytimes.com/2013/09/29/us/children-and-guns-the-hidden-toll.html?pagewanted=all&_r=0) .........................................6

Shannon Frattaroli *et al*., *The Case for Gun Policy Reforms in America* 11 (2012) (available at http://www.issuelab.org/click/download1/case_for_gun_policy_reforms_in_america_the?_ga=1.94125725.167986724.1443205185) ............................................................................................5

U.S. General Accounting Office, *Accidental Shootings: Many Deaths and Injuries Caused by Firearms Could Be Prevented* 17 (Mar. 1991) (available at http://www.gao.gov/assets/160/150353.pdf)...................5

**Rules**

Fed. R. App. P., Rule 29(c)(4) ..................................................................1

Fed. R. App. P., Rule 29(c)(5) ..................................................................2

## STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

Pursuant to Rule 29(c)(4) of the Federal Rules of Appellate Procedure, the Brady Center to Prevent Gun Violence ("Brady Center") respectfully submits this *amicus curiae* brief, with the consent of all parties, in support of Appellees.

The Brady Center to Prevent Gun Violence is an organization whose mission is to create a safer America by dramatically reducing gun deaths and injuries. The Brady Center aims to halve the number of U.S. gun deaths by 2025 from the current annual toll of approximately 32,000. The Brady Center intends to achieve this goal by keeping guns out of the wrong hands through three impact driven policy campaigns: (i) the "Finish the Job" campaign to establish life-saving Brady background checks for all gun sales, (ii) the "Stop 'Bad Apple' Gun Dealers" campaign to shutdown gun dealers operating illegally (five percent of gun dealers supply ninety percent of all guns used in crime), and (iii) the national campaign to promote awareness of the real dangers of guns in the home. With these campaigns, the Brady Center aspires to prevent homicides, suicides, and unintentional shootings that happen every day.

As such, the Brady Center and its supporters have a great interest in states adopting and maintaining public safety requirements relating to the purchase and sale of firearms that pass constitutional muster under the Second Amendment of the United States Constitution ("Second Amendment"). Therefore, the Brady Center

files this *amicus curiae* brief (i) to provide the Court with a review of statutes and regulations of other states similar to the ones challenged by Appellants that other state legislatures considered constitutional, just as the California State Legislature did with the statute at issue here; and (ii) to provide the Court with a review of court decisions evaluating such statutes, concluding that they are constitutional under the Second Amendment.

## STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTORNEYS, OR OTHER PERSONS IN FUNDING OR AUTHORING THE BRIEF

Pursuant to Fed. R. App. P., Rule 29(c)(5), no counsel for a party authored this brief in whole or in part, and that no person other than amicus, its members, or its counsel made a monetary contribution to this brief's preparation or submission.

## ARGUMENT

### I. CALIFORNIA'S UNSAFE HANDGUN ACT FALLS SQUARELY WITHIN THE LIST OF PRESUMPTIVELY LAWFUL REGULATIONS PROVIDED BY *DISTRICT OF COLUMBIA V. HELLER*

Contrary to Appellants' assertion, the California Unsafe Handgun Act (the "CUHA") does not "ban[] the sale of certain guns," but rather sets forth safety criteria or qualifications for any gun to be commercially sold in California. *See* Appellant Brief at 33. Such safety criteria fall squarely within the list of "presumptively lawful" regulations the Supreme Court blessed in *District of*

*Columbia v. Heller* as permissible under the Second Amendment.   554 U.S. 570

(2008).

In *Heller*, the Supreme Court held that "the [District of Colombia's] ban on

handgun possession in the home violates the Second Amendment, as does its

prohibition against rendering any lawful firearm in the home operable for the

purpose of immediate self-defense."   *Id.* at 635.   The Court's opinion in *Heller*,

however, did not strike down or bring into question presumptively lawful regulatory

measures such as laws imposing conditions and qualifications on the commercial

sale of arms.   On the contrary, the Supreme Court acknowledged in *Heller* that

jurisdictions may establish regulations to deal with the problem of handgun violence

in the United States:

> We are aware of the problem of handgun violence in this
> country, and we take seriously the concerns raised by the many
> *amici* who believe that prohibition of handgun ownership is a
> solution.   The Constitution leaves the District of Columbia a
> variety of tools for combating that problem, including some
> measures regulating handguns, see *supra,* at 2816 – 2817, and n.
> 26.

*Id.* at 636.   In the pages cited above, the Supreme Court explains that "nothing in

our opinion should be taken to cast doubt on . . . laws *imposing conditions and*

*qualifications on the commercial sale of arms*."   *Id.* at 626-27 (emphasis added).

The Supreme Court goes on to specify in note 26 that "[w]e identify these

presumptively lawful regulatory measures only as examples; our list does not

purport to be exhaustive." *Id.* at 627 n. 26. The Supreme Court later reiterated that laws such as the CUHA are presumptively lawful, explaining that "[w]e made it clear in *Heller* that our holding did not cast doubt on [] longstanding regulatory measures," including "laws imposing conditions and qualifications on the commercial sale of firearms." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010).

Hence, the CUHA challenged by the Appellants falls squarely within such protected regulatory measures identified by the Supreme Court in *Heller* and *McDonald* and therefore is constitutional under the Second Amendment. The District Court's judgment upholding the Act should be affirmed and Appellants' appeal should be denied.

## A. Firearms Without Safety Features Raise the Risk of Injury and Death From Accidental and Unintentional Shootings

Many firearms are manufactured and sold in the United States without basic safety features or without having undergone appropriate safety testing. Such poorly constructed firearms play a significant role in causing unintentional shootings. Between 2005 and 2010, unintentional shootings in the United States killed almost 3,800 people and injured over 95,000 others. Of these victims, nearly 42,000 were under 25 years of age, more than 1,300 of whom died. Law Center to Prevent Gun Violence, *Regulating Guns in America: A Comprehensive Analysis of Gun Laws Nationwide* 206 (2014) (available at

http://smartgunlaws.org/wp-content/uploads/2014/10/RGIA-For-Web.pdf).   While

these unintentional shootings account for only a small share of firearm injuries, as

stated in a 2012 study from the Johns Hopkins Center for Gun Policy and Research,

"these deaths and injuries are *highly preventable through proper design of*

*firearms*….   Unintentional shootings of this type *can be prevented by magazine*

*safety disconnect devices and loaded chamber indicators*, relatively inexpensive

safety features already available on some handguns."   Shannon Frattaroli *et al*., *The*

*Case for Gun Policy Reforms in America* 11 (2012) (available at

http://www.issuelab.org/click/download1/case_for_gun_policy_reforms_in_americ

a_the?_ga=1.94125725.167986724.1443205185) (emphasis added).   A federal

government study of unintentional shootings found that eight percent of such

shooting deaths resulted from shots fired by children under the age of six.   U.S.

General Accounting Office, *Accidental Shootings: Many Deaths and Injuries*

*Caused by Firearms Could Be Prevented* 17 (Mar. 1991) (available at

http://www.gao.gov/assets/160/150353.pdf).   The U.S. General Accounting Office

estimated that 31% of unintentional deaths caused by firearms might be prevented

by the addition of two devices:   a child-proof safety lock (8%) and a loading

indicator (23%).   *Id*.

   Moreover, accidental shootings may be vastly underreported and statistically

underrepresented, in which case developing safety regulations for handguns is even

more important.   A *New York Times* review of hundreds of child firearm deaths found that there were roughly twice as many accidental shootings as indicated by records because of idiosyncrasies in how such deaths are classified by the authorities.   Michael Luo & Mike McIntire, *Children and Guns:   The Hidden Toll*, NY Times at A1 (Sept. 29, 2013) (available at

http://www.nytimes.com/2013/09/29/us/children-and-guns-the-hidden-toll.html?pagewanted=all&_r=0).   For instance, the review identified over a hundred accidental firearm deaths of children under age 15 that were not recorded as accidents in eight states where records were available.   *Id.*   To combat the significant danger of accidental shootings with handguns present, States must have means of enacting reasonable laws to protect their citizens.

### B.   Other Jurisdictions Have Similarly Established Public Safety Requirements for the Commercial Sale and Purchase of Firearms

Six states and the District of Columbia have enacted laws addressing firearm safety similar to the CUHA, establishing a series of design and safety tests or standards that handguns must meet before they can be lawfully manufactured, transferred, or possessed.   Maryland, Massachusetts, and the District of Columbia maintain and regularly update a roster, similar to the roster established by the CUHA, of approved handgun models that satisfy the jurisdiction's safety tests and that lawfully may be manufactured, transferred, or possessed in the jurisdiction. *See* D.C. Code Ann. § 7-2505.04; D.C. Mun. Regs. tit. 24, § 2323; Md. Code Ann.,

Pub. Safety, §§ 5-405, 5-406; Mass. Gen. Laws ch. 140, §§ 123, 131½, 131¾.  Massachusetts and New York require drop testing and firing testing, similar to California's drop test requirement, with design safety standards set for all handgun models manufactured, transferred, or possessed in their respective jurisdictions.   *See* 501 Mass. Code Regs §§ 7.01-7.16; 940 Mass Code Regs. §§ 16.01-16.09; N.Y. Comp. Codes R. & Regs. tit. 9, §§ 482.5-482.6.   Hawaii, Illinois, Massachusetts, Minnesota, and New York all set standards for all handgun models manufactured, transferred, or possessed in their respective jurisdictions, and require melting point testing, which is another standard used to measure a handgun's design safety that is similar to the design standards set by California.   *See* Haw. Rev. Stat. Ann. § 134-15(a) (West 2015); 720 Ill. Comp. Stat. 5/24-3(A)(h) (West 2015); Mass. Gen. Laws ch. 140, § 123; Minn. Stat. § 624.716; N.Y. Comp. Codes R. & Regs. tit. 9, § 482.5.

## *Washington D.C.*

Not long after the Supreme Court decided *Heller*, the Council of the District of Columbia revisited its regulatory measures regarding firearms and adopted legislation to regulate their sale in a fashion similar to the legislation adopted by the State of California under challenge here.

The District of Columbia passed the Firearms Registration Amendment Act of 2008, D.C. Law 17-372, which added Sections 503 and 504 to the Firearms

Control Regulations Act of 1975.   D.C. Code Ann. §§ 7-2505.03-7-2505.04 (West 2015).   Section 503 establishes rules on the microstamping of pistols which are to be further developed by the Chief of Police, while Section 504 prohibits the sale, transfer, ownership, or possession of certain pistols designated as unsafe.   Section 503 defines the term "microstamp-ready" as meaning "a semiautomatic pistol that is manufactured to produce a unique alpha-numeric or geometric code on at least 2 locations on each expended cartridge case that identifies the make, model, and serial number of the pistol."   It then goes on to establish that beginning January 1, 2016 semiautomatic pistols must be microstamp-ready if manufactured, delivered, sold, offered for sale, loaned, given or transferred in the District of Columbia.   Similarly, Section 504 makes direct reference to California's handgun roster.   Subject to certain exceptions similar to the ones carved out by the CUHA, Section 504 requires that "a pistol that is not on the California Roster of Handguns Certified for Sale (also known as the California Roster of Handguns Determined Not to be Unsafe)… may not be manufactured, sold, given, loaned, exposed for sale, transferred, or imported into the District of Columbia."   Hence, the District of Columbia, after considering the Supreme Court's decision in *Heller*, concluded that the CUHA imposed conditions and qualifications on the commercial sale of firearms that would withstand Second Amendment scrutiny.

*Massachusetts*

Similar to the CUHA, Massachusetts prohibits licensed firearms dealers from transferring any handgun that does not appear on a roster of approved firearms. Mass. Gen. Laws ch. 140, §§ 123, 131½, 131¾. An "approved firearm" is a handgun that meets or exceeds various design and safety criteria, including drop testing, firing testing, and a melting point test. *Id*. at § 123. Tests are conducted by independent firearm testing laboratories approved by the Secretary of the Executive Office of Public Safety. 501 Mass. Code Regs §§ 7.03; 7.06. Like California, Massachusetts has set certain exemptions from these testing requirements, which do not apply to (1) any handgun lawfully owned or possessed under a license issued on or before October 21, 1998; or (2) any handgun designated by the Secretary with the advice of the Gun Control Advisory Board as a handgun solely designed and sold for formal target shooting competitions. Mass. Gen. Laws ch. 140, § 123. A firearm can also be placed on the roster under the functional equivalence test, similar to the CUHA's design equivalent exception, if another firearm model made by the same manufacturer has satisfactorily completed required tests and an approved independent testing laboratory certifies that the firearm is a functional design equivalent of another already tested model. 501 Mass. Code Regs § 7.04.

Just as California requires handguns to have certain safety design requirements, Massachusetts requires all handguns to be equipped with both a safety

device designed to allow use only by the owner or authorized user of the firearm and a chamber load indicator or magazine disconnect mechanism. 940 Mass Code Regs. §§ 16.02; 16.05.

*Maryland*

Like California and Massachusetts, the State of Maryland has established a handgun roster of authorized handguns. Among the characteristics considered by Maryland's Handgun Roster Board to place any handgun on its roster are a handgun's concealability, ballistic accuracy, weight, quality of materials, quality of manufacture, reliability as to safety, caliber, detectability by standard public law enforcement, and utility for legitimate purposes such as sporting activities, self-protection, or law enforcement. Md. Code Ann., Public Safety § 5-405. *See also* Md. Code Reg. 29.03.03.10 (2015). These criteria are similar to safety considerations established by the CUHA and "presumptively lawful" under *Heller* and *McDonald*.

In addition, subject to certain exceptions, Maryland prohibits any person from: (i) manufacturing for distribution or sale a handgun that is not included on the handgun roster in the State; (ii) selling or offering for sale in Maryland a handgun manufactured after January 1, 1985 that is not included on the handgun roster; and (iii) manufacturing, selling or offering for sale a handgun with an obliterated, removed, changed or otherwise altered manufacturer's identification

mark or number.   Md. Code, Public Safety, § 5-406.   Once again, the safety

requirements established by Maryland, as those established by California in the

CUHA, intend to protect handgun purchasers from acquiring weapons unfit for

self-defense and that can be a hazard to the purchaser or a transferee.

### New York

In New York, similar safety requirements exist.   Under rules promulgated by

the Superintendent of State Police, all handguns manufactured or assembled in the

State must first receive a certificate of compliance from the Superintendent of State

Police.   N.Y. Comp. Codes R. & Regs. tit. 9, §§ 482.1-482.2.   The certificate

requires compliance with various safety standards designed to protect users against

unintended discharge, including drop testing, firing testing, and a melting point

standard.   *Id*. at §§ 482.5-482.6.   Similar to California and Massachusetts design

safety requirements, New York requires that all handguns be equipped with a safety

device to prevent unintended firing.   *Id*. at § 482.5.

### Illinois

The Illinois Criminal Code makes it unlawful for a person licensed as a

federal firearms dealer under Section 923 of the federal Gun Control Act of 1968 (18

U.S.C. § 923) to offer for sale, sell, or transfer a handgun to a person not licensed

under that Act, unless the dealer sells or includes with the handgun a device or

mechanism, other than the firearm safety, designed to render the handgun

temporarily inoperable or inaccessible. The statute identifies two potential ways for a licensed federal firearms dealer to comply with this requirement: (i) by including an external device that is attached to the handgun with a key or combination lock and designed to prevent the handgun from being discharged unless the device is deactivated; or (2) by including an integrated mechanical safety, disabling or locking device that is built into the handgun and designed to prevent the handgun from being discharged unless the device has been deactivated. 720 Ill. Comp. Stat. 5/24-9.5(a) (West 2015).

Similar to the CUHA, Illinois provides prudential exceptions to this safety requirement statute when the purchase, sale or transportation of a handgun involves, in general terms, public law enforcement, the lawful sale or transfer of a handgun outside of the state, or an antique firearm, among others. 720 Ill. Comp. Stat. 5/24-9.5(d) (West 2015).

Illinois also maintains a melting point safety statute for handguns, which is another standard used to measure a handgun's design safety similar to the design standards set by California. The Illinois Criminal Code makes it an offense for a person holding a license as a dealer or manufacturer to manufacture, sell, or deliver to any unlicensed person a handgun having a barrel, slide, frame, or receiver of certain metals which will melt or deform at a temperature of less than 800 degrees Fahrenheit. 720 Ill. Comp. Stat. 5/24-3(A)(h) (West 2015).

*Hawaii*

In 1988, Hawaii enacted a statute that establishes a melting point firearm safety requirement that makes it unlawful for any person, including licensed manufacturers, importers, or dealers, to possess, sell, or deliver any pistol or revolver with a frame or receiver comprising a die casting of zinc alloy which has a melting temperature of less than 800 degrees Fahrenheit.   Haw. Rev. Stat. Ann. § 134-15(a) (West 2015).   This melting point safety requirement exempts pistols or revolvers that were duly registered prior to July 1, 1975 or antique pistols or revolvers.   Haw. Rev. Stat. Ann. § 134-15(b) (West 2015).

*Minnesota*

Like Hawaii and Illinois, Minnesota has banned the manufacture and sale of handguns not meeting certain melting point testing.   Other than antique firearms, Minnesota bans firearms having a frame, barrel, cylinder, slide or breechblock of any material having a melting point of less than 1,000 degrees Fahrenheit, an ultimate tensile strength of less than 55,000 pounds per square inch, or, for any powdered metal, a density of less than 7.5 grams per cubic centimeter.   Minn. Stat. § 624.712.

### C.    Since *Heller*, Courts Have Generally Concluded that These Firearm Safety Requirements Survive a Second Amendment Challenge

Since *Heller*, courts have been flooded with lawsuits claiming that various federal, state, and local gun laws violate the Second Amendment.   According to a

comprehensive 2014 analysis, well over 800 decisions have been issued in cases

raising Second Amendment challenges since *Heller,* with more than 90% of these

decisions ultimately rejecting the Second Amendment challenge at issue.   Law

Center to Prevent Gun Violence, *supra* at 279.

The D.C. Circuit, for example, upheld the District of Columbia's ban on

assault weapons and large capacity magazines.   *Heller v. District of Columbia*, 670

F.3d 1244 (D.C. Cir. 2011).   The Second Circuit also upheld New York City's $340

fee for a license to own a handgun and the Fifth Circuit upheld a law banning the sale

of handguns to persons under 21.   *Kwong v. Bloomberg*, 723 F.3d 160 (2nd Cir.

2013); *NRA v. ATF*, 714 F.3d 334 (5th Cir. 2013).   More importantly, this Circuit

upheld two San Francisco ordinances, one requiring handguns to be locked in a gun

safe or secured with a trigger lock when they are not carried by the owner, and the

other prohibiting the sale of hollow-point ammunition.   *Jackson v. City & County of

San Francisco*, 746 F.3d 953 (9th Cir. 2014).   In reaching its holding, this Circuit

acknowledged the Second Amendment right to bear arms, but highlighted that it,

"like the First Amendment right to freedom of speech, may be subjected to

governmental restrictions which survive the appropriate level of scrutiny."   *Id*. at

970.

By contrast, courts have only struck down gun laws in a handful of cases.

Even in those cases, courts have been careful to note that most gun safety laws are

not prohibited by the Second Amendment. *See, e.g.*, *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928, 945 (N.D. Ill. 2014) (striking down a Chicago ordinance banning all gun transfers) ("To address the City's concern that gun stores make ripe targets for burglary, the City can pass more targeted ordinances aimed at making gun stores more secure—for example, by requiring that stores install security systems, gun safes, or trigger locks . . . . Or the City can consider designating special zones for gun stores to limit the area that police would have to patrol to deter burglaries. . . . [N]othing in this opinion prevents the City from considering other regulations—short of the complete ban—on sales and transfers of firearms to minimize the access of criminals to firearms and to track the ownership of firearms."). By contrast, the CUHA is not a ban on handguns nor does it concern handgun possession, but rather, it regulates commercial sales through various safety requirements. Handguns are still widely available for purchase and possession in California.

## CONCLUSION

For the reasons stated above, the Brady Center respectfully urges the Court to affirm the District Court's judgment and deny the Appellants' appeal.

## CERTIFICATE OF COMPLIANCE

I certify that the attached brief is proportionally spaced, has a typeface of 14 points or more, and contains 3,368 words (based on the word processing system

used to prepare the brief).

Dated:   September 28, 2015          Respectfully submitted,

By: */s/ Eric A. Krause*

Eric A. Krause, Esq.
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306-1209
Telephone:   650-213-0300

Daniel Levin, Esq.
White & Case LLP
701 – 13th Street NW
Washington, DC 20005-3807
Telephone:   202-626-3000

Jonathan Lowy
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC 20002
Telephone: 202-370-8104

Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I caused the electronic filing of this paper with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and therefore will be served by the appellate CM/ECF system.

Dated: September 28, 2015

Respectfully submitted,

By: */s/ Eric A. Krause*

Eric A. Krause, Esq.
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306-1209
Telephone: 650-213-0300

Daniel Levin, Esq.
White & Case LLP
701 – 13th Street NW
Washington, DC 20005-3807
Telephone: 202-626-3000

Jonathan Lowy
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC 20002
Telephone: 202-370-8104

Counsel for Amicus Curiae