CASE No. 15-15449
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IVAN PENA, DONA CROSTON, ROY VARGAS, BRETT STEWART, SECOND
AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC.

*Plaintiffs and Appellants*,

v.

STEPHEN LINDLEY, Chief of the California Department of Justice Bureau of Firearms

*Defendant and Appellee.*

---

Appeal From The United States District Court
Eastern District of California, Case No. 2:09-CV-01185-KJM-CKD
Hon. Kimberly J. Mueller, District Judge

---

## BRIEF OF *AMICUS CURIAE* OFFICE OF THE LOS ANGELES CITY ATTORNEY IN SUPPORT OF DEFENDANT-APPELLEE

---

**CALDWELL LESLIE & PROCTOR, PC**
Michael R. Leslie, State Bar No. 126820
*leslie@caldwell-leslie.com*
Andrew Esbenshade, State Bar No. 202301
*esbenshade@caldwell-leslie.com*
Amy E. Pomerantz, State Bar No. 275691
*pomerantz@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for OFFICE OF THE LOS ANGELES CITY ATTORNEY

**CORPORATE DISCLOSURE STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 26.1**

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Office of the Los Angeles City Attorney states that it is a non-profit organization, has no parent companies, and has not issued shares of stock.

DATED:  September 28, 2015    CALDWELL LESLIE & PROCTOR, PC
MICHAEL R. LESLIE
ANDREW ESBENSHADE
AMY E. POMERANTZ


By        /s/ Andrew Esbenshade
    ANDREW ESBENSHADE
Attorneys for OFFICE OF THE LOS
ANGELES CITY ATTORNEY

# **TABLE OF CONTENTS**

**Page**

INTEREST OF AMICUS CURIAE ...........................................................1

CONSENT OF THE PARTIES ................................................................1

STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF
    APPELLATE PROCEDURE 29(c)(5).............................................2

SUMMARY OF ARGUMENT ...............................................................2

ARGUMENT .......................................................................................4

I.    The UHA's Microstamping Requirement Is Supported by an
    Important Public Interest in Solving Gun Crimes and Deterring Gun
    Violence .....................................................................................4

II.    Compliance with the UHA's Microstamping Requirement Is Not
    Technologically Impossible........................................................9

    A.    Appellants and Their Amici Ignore a Sworn Declaration by the
        Inventor of Microstamping Technology Attesting that
        Microstamping Can Be, and Has Been, Successfully
        Implemented .......................................................................10

    B.    In Decrying Microstamping as Impossible, Appellants Misstate
        the Record..........................................................................13

    C.    The NSSF/SAAMI Amici Curiae Brief Also Fails to Establish
        that Microstamping Technology Is Impossible...................16

CONCLUSION ....................................................................................20

STATEMENT OF RELATED CASES ....................................................21

CERTIFICATE OF COMPLIANCE ......................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)..................................................................................3

*Jackson v. City & County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 2799 (2015) ....................4

*Jespersen v. Harrah's Operating Co., Inc.,*
    444 F.3d 1104 (9th Cir. 2006) ...........................................................18

*In re Oracle Sec. Litig.,*
    627 F.3d 376 (9th Cir. 2010) .............................................................18

*Turnacliff v. Westly,*
    546 F.3d 1113 (9th Cir. 2008) ...........................................................19

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) .........................................................4, 9

*United States v. Dugan,*
    657 F.3d 998 (9th Cir. 2011) ..............................................................4

*United States v. Salerno,*
    481 U.S. 739 (1987)........................................................................8

**Statutes**

Cal. Penal Code § 31910(b)(7)(A)...............................................................*passim*

Fed. R. App. Proc. 29(a) ...........................................................................1

Fed. R. App. Proc. 29(c)(5)........................................................................2

Fed. R. Evid. 201 .................................................................................18

Fed. R. Evid. 201(b)..............................................................................19

Fed. R. Evid. 201(c)(2) ...........................................................................19

Fed. R. Evid. 201(e) ................................................................19

U.S. Const. amend. II ........................................................3, 4, 9

**Legislative Materials**

A.B. 1471, 2007-2008 Regular Session (Cal. 2007) ....................7

Cal. Bill Analysis, A.B. 1471 Sen. (July 11, 2007) ................7, 9

Senate Com. on Public Safety, Analysis of Assembly Bill No. 1471, 2007-2008 Regular Session (June 26, 2007) ..........................6

## INTEREST OF AMICUS CURIAE

*Amicus Curiae* Office of the Los Angeles City Attorney has a direct and immediate interest in defending the microstamping requirement set forth in Cal. Penal Code § 31910(b)(7)(A). The animating purpose of the statute—solving and deterring gun-related crimes—speaks to the City Attorney's mandate to enforce the law and to prosecute crimes in the City of Los Angeles. Because a substantial amount of gun violence occurs in Los Angeles, enforcement of the law directly affects the City Attorney's interests in ensuring the safety of Los Angeles residents and improving law enforcement's ability to solve gun-related crime. Were Appellants to succeed in overturning the statute, local law enforcement would be denied a valuable crime-fighting tool developed by the California Legislature after due consideration, and the City Attorney's efforts at preventing gun violence would be impeded.

## CONSENT OF THE PARTIES

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, counsel for *Amicus Curiae* Office of the Los Angeles City Attorney state that on September 21 and 24, 2015, Appellee and Appellants respectfully, consented to the filing of this *amicus curiae* brief.

## STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF

## APPELLATE PROCEDURE 29(c)(5)

*Amicus Curiae* states that (a) no party's counsel authored this brief in whole or in part; (b) no party, nor counsel for either party, contributed money that was intended to fund preparing or submitting this brief; and (c) no person other than *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

California's Unsafe Handgun Act ("UHA") prohibits the manufacture, or sale of any handgun in California that does not meet certain requirements. As of January 2010, the California legislature defined "unsafe handguns" to include all new handguns that are not designed or equipped with microstamping on two or more places. Specifically, under Cal. Penal Code Section 31910(b)(7)(A),

> all semiautomatic pistols that are not already listed on the [unsafe handguns] roster . . . [must be] designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol,

and that are transferred by imprinting on each cartridge

case when the firearm is fired[.]

Cal. Penal Code. § 31910(b)(7)(A).

Appellants challenge this provision, as well as the UHA in its entirety, on the grounds that it constitutes a "ban on handguns" in violation of the Second Amendment pursuant to *District of Columbia v. Heller*, 554 U.S. 570 (2008). However, as Defendant-Appellee has explained—and as the district court in this case has correctly concluded—this claim is flatly wrong: the UHA is not a handgun ban, and in no way burdens Appellants' Second Amendment rights.

As *amicus curiae* supporting an affirmance of the district court's summary judgment order, the Office of the Los Angeles City Attorney submits this brief for two reasons. First, it seeks to elaborate on the nexus between the UHA's microstamping provision and the important public interest of solving and deterring gun crimes, and to demonstrate why the means-end fit between the two passes constitutional muster should the Court reach that step of the analysis. Second, *amicus* addresses and refutes misleading factual assertions made by Appellants and their *amici curiae*, the National Shooting Sports Foundation ("NSSF") and Sporting Arms and Ammunition Manufacturers' Institute, Inc. ("SAAMI"), which assert that compliance with the microstamping requirement is technologically impossible.

This is no matter of abstract constitutional theory; the stakes of this Court's decision are high.  Acceptance of Appellants' misguided position would have dangerous real-world consequences for all Californians.  It would deny law enforcement an invaluable tool for efficiently apprehending criminals and reducing gun violence.  Thus, for the reasons set forth below, as well as in Appellee's answering brief, this Court should reject Appellants' and their *amici's* flawed legal arguments, disregard their unsupported factual assertions, and uphold the district court's ruling that California's Unsafe Handgun Act does not violate the Second Amendment.

## ARGUMENT

I.    **The UHA's Microstamping Requirement Is Supported by an Important Public Interest in Solving Gun Crimes and Deterring Gun Violence**

As Appellee has explained, because the UHA does not burden Appellants' Second Amendment rights, it is presumptively lawful and this Court need not engage in any further analysis.  (Answering Br. at 25-35; *see also United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011).)  However, to the extent that the Court disagrees and proceeds to the second of the two-step approach governing Second Amendment cases in this Circuit, *see United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 2799 (2015), the UHA's

microstamping legislation satisfies this inquiry as well. Specifically, Penal Code Section 31910(b)(7)(A) survives intermediate scrutiny because it furthers the important public interest in solving gun crimes and deterring unlawful gun violence by providing critical leads that allow law enforcement to apply resources efficiently and strategically.

As Todd Lizotte, the acknowledged "inventor of microstamping" (2ER:39), explained in a declaration submitted to the district court: "The concept of microstamping is not new; all firearms currently microstamp unintentionally. . . . Intentional firearm microstamping is simply an enhanced version of a well-understood mechanical process that has been optimized and applied to firearms with identifiable micro-code structures. It is far more reliable than unintentional tool mark transfers because the intentionally microstamped cartridge features can be quantitatively analyzed, allowing for quick and direct analysis of the probability of uniqueness." (1SER:0114-115.)

Mr. Lizotte went on to explain in his declaration that "[a]s the firearm is discharged, the marks transfer a code to the cartridge casing before it is ejected out of the firearm. When recovered at the scene of a crime, the microstamped cartridge can identify a specific firearm as the source of the cartridge, without the need to recover that firearm. The purpose is to provide an improved piece of trace evidence for forensic investigators, so that they can track a firearm without having

to recover it.  Microstamping therefore provides law enforcement with an important tool in solving crimes and thus deters unlawful gun violence by providing critical intelligence to allow law enforcement to apply resources efficiently and strategically."  (1SER:0115.)

There is no doubt that in enacting Assembly Bill No. 1471 (2007-2008 Reg. Session),[1] the California legislature aimed to resolve this specific, endemic problem: unsolved gun crime.  As stated in the legislative record:

> No arrest is made in approximately 45% of homicides in California because police lack the evidence they need.
>
> Of the approximately 2400 homicides in California per year over 60% are committed with handguns.
>
> Approximately 70% of new handguns sold in California are semiautomatics.

(1SER:0057 (Senate Com. on Public Safety, Analysis of Assembly Bill No. 1471, 2007-2008 Regular Session (June 26, 2007) at H).)  In many cases, the only evidence left at a crime scene is a spent cartridge casing.  This often results in a dead end.  However, if a *microstamped* cartridge were recovered at the scene of a crime, law enforcement would be able to identify a specific firearm as the source of the cartridge without needing to recover that firearm.  (1SER:115.)  Further,

---

[1] Upon enactment, this bill became Cal. Penal Code Section 31910(b)(7)(A).

microstamping would enhance law enforcement's ability to link a firearm to multiple crimes, and thus determine patterns and potentially common perpetrators. Microstamping technology thus provides an important piece of trace evidence for forensic investigators, which would allow them to track a firearm without having to recover it.

For this reason, AB 1471 received broad support from the law enforcement community. Indeed, the bill passed with support of more than sixty California police chiefs and sheriffs and five law enforcement organizations. (*See* Cal. Bill Analysis, A.B. 1471 Sen. (July 11, 2007).)[2] As the Stockton Police Department stated on the record:

> The Stockton Police Department believes that AB 1471 would allow law enforcement to positively link used cartridge casings recovered at crime scenes to the crime gun. Further, AB 1471 would help law enforcement solve handgun crimes, reduce gang violence, and reduce gun trafficking of new semiautomatic handguns.

(1SER:0063.)

---

[2] This document can be accessed here:
http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=200720080AB1471.

For these reasons, as well as those set forth in Appellee's Answering Brief, there is a reasonable means-end fit between the UHA's microstamping provision and the important state interest in reducing gun violence and solving crime. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (crime prevention is a compelling government interest). Nor do Appellants offer any persuasive contention to the contrary. Rather, they assert without supporting evidence that "[t]he notion that microstamping is so necessary to the important interest of solving crimes, such that there is no alternative but to require it—when this technology does not actually exist in the marketplace—is untenable." (Appellants' Opening Brief ("AOB") at 52.) The only thing untenable, however, is Appellants' argument, which is not only predicated on faulty logic, but also rests on the unsupported supposition that microstamping technology does not exist.[3] *See infra* Section II.B.

In sum, to the extent the Court reaches this argument, it should find that the microstamping provision survives constitutional scrutiny under the second step of

---

[3] Contrary to what Appellants and their *amici* suggest, that a person committing a crime might be able to defeat the microstamping technology does not detract from its legitimacy as a significant tool to assist law enforcement and reduce gun violence. Criminals could eliminate fingerprints at crime scenes by wearing gloves, yet fingerprints continue to appear and play an important role in the solving of crimes.

*Chovan*'s analysis, and uphold the district court's grant of summary judgment on this basis.

## II. Compliance with the UHA's Microstamping Requirement Is Not Technologically Impossible

Appellants' entire constitutional challenge to the UHA's microstamping provision relies upon an unsupported premise:  that compliance with its requirements is technologically impossible.[4]  To convince the Court to accept this dubious premise, Appellants, along with *Amici Curiae* NSSF and SAAMI (which brought—and lost—a separate action in California state court based solely on this issue), dissect the record, cherry-picking the facts they like, and mischaracterizing or omitting those they do not.[5]  However, as set forth below, not only does the record fail to support Appellants' assertion that compliance with the microstamping requirement is impossible, it is replete with proof to the contrary.

---

[4] This untenable argument plays out as follows:  Because microstamping technology is supposedly impossible, the UHA amounts to a back-door ban on semi-automatic weapons, and hence gives rise to a Second Amendment violation. (AOB at 12.)  It does not get beyond the first assumption, however, because microstamping is technologically possible.

[5] Notably, both *amici* opposed the passage of the microstamping legislation, as did most gun manufacturers.  (*See* Cal. Bill Analysis, A.B. 1471 Sen. (July 11, 2007) (http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=200720080AB1471.)  Having failed in the political process, they now seek invalidation of the statute by claiming, without support, that microstamping is impossible.

***A.  Appellants and Their Amici Ignore a Sworn Declaration by the Inventor of Microstamping Technology Attesting that Microstamping Can Be, and Has Been, Successfully Implemented***

First—and most tellingly—Appellants and their *amici* fail to even acknowledge, let alone rebut, the sworn declaration of the inventor of microstamping technology, Todd Lizotte, submitted to the district court in this action.  Mr. Lizotte's declaration makes clear that microstamping is more than theoretically possible—it has been successfully developed and tested.  Mr. Lizotte testified that:

- "[O]ver the years I have publicly demonstrated microstamping technology seven times, using firearms outfitted with firing pin and/or breech face elements."  (1SER:0114.)

- "In May of 2007, for instance, I conducted a stress test in which I fired over 2,500 rounds from a Smith and Wesson .40 caliber semiautomatic handgun that had been outfitted with microstamping technology.  The test employed fully optimized firing pins that were designed to work with that specific model of firearm, and used five different brands of ammunition.  Using optical microscopy and scanning electron microscopy techniques, all eight microstamped digits from the firing pin were legible 97% of the time.  Additionally,

breech face markings transferred to cartridge casings were legible

_96% of the time_.  Between firing pin and breech face markings, all

eight microstamped digits were identifiable in all cases."

(1SER:0119-120.)

- **"Although the firing pin and breech face are viable and effective**

   locations for microstamping, various other surfaces—including the

   firing pin port, ejector, extractor, and chamber wall can be used."

   (1SER:0118.)

Mr. Lizotte thus goes on to conclude:

- "Based on my experience, expertise, and my own testing results as the

   inventor of microstamping, compliance with microstamping

   requirements is technologically possible.  Thus, manufacturers could

   meet the microstamping requirement on currently unrostered

   weapons, allowing such weapons to be rostered."  (1SER:0115.)

Significantly, Mr. Lizotte's averment that microstamping technology is

unequivocally possible _is not disputed by any expert in the record_.  At best,

Appellants try to discredit him by claiming his own studies indicate that firearm

microstamping is unproven and unreliable.  (AOB at 10.)  But the only evidence to

which Appellants cite in support of this statement is a declaration of Lawrence

Keane, a Vice President and the General Counsel of _amicus_ NSSF and Secretary

and General Counsel of *amicus* SAAMI, in which Mr. Keane simply offers a lay opinion about the efficacy of microstamping that both ignores Mr. Lizotte's declaration and relies on the supposed findings and opinions of others, rather than any personal knowledge he has. (2ER:39, 42.) Moreover, Mr. Lizotte's articles upon which Appellant purports to rely do not ultimately support Appellants' rhetoric. The article cited simply advises that further research be undertaken with regard to the "technical aspects, production costs, and database management associated with microstamping." (2ER:104-105.) And—importantly, for the present purposes—the article proceeds to conclude: "[I]t should be noted that none of the above objections are inherently unsurmountable. While it is likely that microstamping will never approach the discriminating power associated with DNA evidence, it is a viable method for providing rapid identification of a firearm in many cases, possibly decreasing the current high workload of forensic examiners." (2ER:105.) To this end, it is highly misleading to describe Mr. Lizotte's scholarship as "confirm[ing] that firearm microstamping is unproven and unreliable[.]" (AOB at 10.)

In sum, Appellants' disregard of sworn testimony in the record by the man who created and successfully tested the microstamping technology at issue severely undercuts the credibility of their impossibility theory.

## B.     In Decrying Microstamping as Impossible, Appellants Misstate the Record

Appellants pepper their opening brief with citations that purportedly substantiate their claim that microstamping is technologically impossible. But the evidence itself tells a different story. Specifically, closer scrutiny of the studies and declarations upon which Appellants rely reveals two recurrent themes. First, while Appellants would have the Court believe that their sources conclusively reject the notion that microstamping technology is possible, this is not the case; as explained above, the studies upon which Appellants rely merely suggest that more research is necessary. For instance, Professor Tulleners—Appellants' *amici*'s star witness—concludes that while "the alphanumeric encoding format has the potential to reliably transfer information from the firing pin to the cartridge case, thereby facilitating the identification of crime guns outfitted with micro-stamping technology. . . Future research effort should begin focus on alpha-numeric coding and it's [sic] applicability to the various firearms that are used in gang related shooting." (2ER:62-63.) Similarly, another nine-year old study upon which Appellants rely posits that "[w]hile the proposed concept [microstamping] seems too simple to fail, the experience of this examiner suggested further examination and testing would be necessary before the firearms industry embraces the proposed solution." (2ER:46.) It is simply misleading to suggest that these studies

conclusively rejected the possibility that microstamping technology can be implemented where they in fact simply advise further research and testing.

The second, and more troubling, theme that permeates the record is the recalcitrance of gun manufacturers. The record makes clear that these companies *have not even tried to implement microstamping technology.* For example, Appellants rely on the Keane Declaration, in which Mr. Keane (the Vice President and General Counsel of NSSF and Secretary and General Counsel of SAAMI) states: "I am unaware of any handgun manufacturer who has attempted, or is even considering trying, to design and equip a semiautomatic pistol incorporating this technology [microstamping]." (2ER:39.) Similarly, the record contains averments from two CEOs of firearms companies supposedly demonstrating that microstamping is impossible, but in fact demonstrating simply that these companies did not so much as *attempt* to comply. To wit:

- James Debny, CEO of Smith & Wesson Corp., similarly declared: "Smith & Wesson does not believe it is possible currently to comply with California's microstamping regulations. . . . As it appears infeasible to comply with the CA DOJ microstamping regulations, Smith & Wesson does not have the ability or plans to incorporate microstamping in its semi-automatic handguns, and cannot forecast when, if ever, it would be able to do so." (2ER:129-130.)

- Michael Fifer, CEO of Sturm, Ruger & Co, declared: "There is no workable microstamping technology today, and Ruger believes that California's microstamping regulations make compliance impossible. . . . As it appears infeasible to comply with the CA DOJ microstamping regulations, Ruger does not have any ability or plans to incorporate microstamping in its semi-automatic handguns, and cannot forecast when, if ever, it would be able to do so." (2ER:126-127.)

These declarations cut to the heart of this matter: it is not that manufacturers *can't* comply with the UHA's microstamping requirement. It is that they *won't*. As Mr. Keane explained in his sworn declaration, "'manufacturing is not a stagnant process for any industry, including firearms manufacturing.'" (NSSF/SAAMI *Amici Curiae* Br. at 11 (citation omitted).) He is correct on this point: Had manufacturers made any effort to refine microstamping technology in the eight years since the legislation was passed, rather than oppose it tooth and nail, they would have figured out how to implement it, as Mr. Lizotte has. Instead, they simply assert (wrongly) that "it *appears* infeasible to comply with the CA DOJ microstamping regulations." (2ER:130) (emphasis added).) Thus, once again, far from substantiating Appellants' theory, the record serves only to undercut the credibility of Appellants and their witnesses.

### C.    The NSSF/SAAMI Amici Curiae Brief Also Fails to Establish that Microstamping Technology Is Impossible

As previously noted, two firearm trade associations, the National Shooting Sports Foundation and Sporting Arms and Ammunition Manufacturers' Institute, Inc. filed a brief as *amici curiae* in support of reversing the district court's judgment.  This brief, however, contains both substantive misstatements and procedural missteps.

The NSSF and SAAMI were plaintiffs in an action filed in Fresno Superior Court, entitled *National Shooting Sports Foundation, Inc., et al. v. State of California, et al.*, Case No. 14CECG00068 DSB ( the "Fresno Action").  As in this case, NSSF and SAAMI brought the Fresno Action to enjoin enforcement of Cal. Penal Code. § 31910(b)(7)(A), *i.e.* the UHA's microstamping provision.  Unlike in this case, however, they asserted no constitutional claim.  Instead, they argued solely that the statute should be enjoined "on the ground that it is impossible to comply therewith."  (NSSF/SAAMI *Amici Curiae* Br. at 3.)  The court in the Fresno Action rejected this argument, however, and granted the State of California's motion for judgment on the pleadings upon concluding that purported "impossibility" was not a cognizable basis upon which to invalidate duly-enacted legislation.

The procedural posture of the Fresno Action undercuts NSSF/SAAMI's present argument. Specifically, they argue in their *amici* brief that the State of California had no "expert support" in the NSSF action, and that "no expert declaration refuting or rebutting his [Tulleners'] conclusions in either declaration was ever filed in the NSSF Action." (*Id.* at 9 & n 2.) They similarly contend that Tulleners' expert opinion that the statutory requirements cannot be complied with "has not and cannot be refuted by the State." (*Id.* at 10.) But these assertions are misplaced; the deadline for expert discovery had not passed in that case and the trial court granted the State of California's *motion for judgment on the pleadings*, and thus such expert opinions supporting the State's position were not relevant. The statements by NSSF/SAAMI are also misleading because Professor Tulleners' expert opinions *are* refuted by Todd Lizotte's earlier-filed declaration *in the present action*.

Moreover, the impossibility argument advanced by NSSF/SAAMI in their *amici* brief (a claim which, again, they lost in the state action), rests predominantly on evidence that is not part of the record in this case.[6] NSSF/SAAMI seek to remedy the fact that there are no expert declarations in the record to rebut Mr.

_____

[6] It also bears mention that notwithstanding the NSSF/SAAMI's claim that compliance with the microstamping provision is impossible, they—along with their expert—concede that "a microstamped alpha numeric code can be etched or imprinted on the tip of a semi-automatic pistol's firing pin." (NSSF/SAAMI *Amici Curiae* Br. at 7.)

Lizotte's declaration by requesting the Court "take judicial notice of the existence of" two declarations by Professor Tulleners filed in the Fresno Action. (*See* ECF No. 14 at 3.) This request is improper and should be rejected.

First, taking judicial notice of the "existence" of the two declarations is irrelevant unless the Court also takes judicial notice of the content of the declarations, a request NSSF/SAAMI have not made. Even assuming *arguendo* that they had made such a request, it would have to be denied. While the Court certainly can take judicial notice where properly requested, such notice is not generally appropriate where the parties could have, but did not, present such material to the district court. *In re Oracle Sec. Litig.*, 627 F.3d 376, 386 n. 1 (9th Cir. 2010) ("The proper place to call attention to any such testimony was in front of the district court."); *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (noting that it is inappropriate to use judicial notice to cure the failure to present relevant facts to the trial court). Here, Appellants chose not to present expert testimony to the district court to rebut Mr. Lizotte's declaration and attempt to demonstrate that microstamping was impossible. *Amici's* improper effort to try to now cure this failure should not be condoned.

Further, NSSF/SAAMI have cited no authority for the proposition that non-party *amici curiae* are permitted to request judicial notice. Rule 201 of the Federal Rules of Evidence contemplates that "a party" may seek judicial notice of

adjudicative facts, providing that a court "must take judicial notice *if a party* requests it and the court is supplied with necessary information," and that "[o]n timely request, *a party* is entitled to be heard on the propriety of taking judicial notice . . . ." Fed. R. Evid. 201(c)(2) and (e) (emphases added.) NSSF/SAAMI cite no authority other than Rule 201 in their request for judicial notice, and cite nothing in Rule 201 that permits non-parties to request judicial notice. (*See* ECF No. 14 at 3.)

Finally, there is no basis to take judicial notice of the opinions set forth in the Tulleners declarations in the Fresno Action. Under Rule 201(b) of the Federal Rules of Evidence, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 n. 5 (9th Cir. 2008) (denying request to take judicial notice of declaration filed in a different action because the facts were not generally known, nor was the source beyond question). Here, the facts regarding the purported impossibility of microstamping set forth in the two Tulleners declarations submitted in the Fresno Action are not "generally known," nor are they from a source "whose accuracy cannot reasonably be questioned." *Id*. The opinions set out by Professor Tulleners are, at best, the subject of debate among

experts in the field and not subject to judicial notice though, in fact, even Professor Tulleners concedes that microstamping is possible. Accordingly, the Court should reject NSSF/SAAMI's improper request for judicial notice and disregard the Tulleners declarations filed by these parties in the Fresno Action.

## CONCLUSION

For the reasons set forth above, *amicus* supports the position of Defendant-Appellee. The Court should reject Appellants' and their *amici's* flawed reasoning and affirm the district court's finding that California's Unsafe Handgun Act is constitutional.

DATED: September 28, 2015     CALDWELL LESLIE & PROCTOR, PC
                              MICHAEL R. LESLIE
                              ANDREW ESBENSHADE
                              AMY E. POMERANTZ


                              By      /s/ Andrew Esbenshade
                              _____
                                  ANDREW ESBENSHADE
                              Attorneys for OFFICE OF LOS ANGELES
                              CITY ATTORNEY

## STATEMENT OF RELATED CASES

*Amicus Curiae* Office of the Los Angeles City Attorney is unaware of any

cases deemed related in this Court.

DATED:  September 28, 2015     CALDWELL LESLIE & PROCTOR, PC
                                     MICHAEL R. LESLIE
                                     ANDREW ESBENSHADE
                                     AMY E. POMERANTZ


By        /s/ Andrew Esbenshade
             ANDREW ESBENSHADE
       Attorneys for OFFICE OF LOS ANGELES
       CITY ATTORNEY

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that this brief uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief contains <u>4,082</u> words according to the word count provided by Microsoft Word, as required by Federal Rule of Appellate Procedure 32.

DATED: September 28, 2015    CALDWELL LESLIE & PROCTOR, PC
MICHAEL R. LESLIE
ANDREW ESBENSHADE
AMY E. POMERANTZ


By     /s/ Andrew Esbenshade
    ANDREW ESBENSHADE
Attorneys for OFFICE OF LOS ANGELES CITY ATTORNEY

| 9th Circuit Case Number(s) | 15-15449 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) September 28, 2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) /s/ Andrew Esbenshade

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)